C. C. KENNEY, PLAINTIFF IN ERROR, V. S. S. HEWS, DEFENDANT IN ERROR.

[FILED MARCH 20, 1889.]

**Statute of Frauds:** AGREEMENT. S. S. H. held a judgment for $653 and costs, against Dr. A. N. L., who owned a stock of drugs and notions worth from $1,500 to $3,000, and owed debts amounting to about $1,500, besides the said judgment of S. S. H., for one of which debts C. C. K. was surety. S. S. H. resided at H., in R. county; A. N. L. at S., in R. county, and C. C. K. at L., in L. county. A. N. L. was afflicted with a fatal disease, and known to be near his end, when C. C. K. went to S., visited A. N. L., talked with him about his condition and affairs, examined into his business, stock, books, etc. Coming away, he left a proposition with one J. C. Lincoln, to be presented to A. N. L., to the effect that he, C. C. K., would pay $1,500 of the debts of A. N. L., specifying them, and including the debt for which C. C. K. was surety, in consideration of a bill of sale of the stock of

drugs and goods, fixtures, accounts, books, notes, etc. Upon reaching his home C. C. K. wrote and posted a letter to S. S. H., as follows: "I have just returned from a trip to see Dr. Long; he is very near his end, and will die in a short time. I looked over his business, and find it in good shape. If J. C. Lincoln and myself have time, we can pay every debt with the goods, and have quite a sum left for his wife. Now I don't want you to make any costs or trouble, as his wife says she will give it all to the lawyers before she will pay it; but I think in a short time after his death we can arrange a settlement with you so you and she will be satisfied. So don't listen to any lawyers or any one, and if we can arrange it, you will get your just dues, as I hold control of the stock, and will let you know when I go down, which will be in a few days after his burial. So keep quiet, and if anything you want to know write me." This letter was received by S. S. H. while on his way to the county seat to issue execution against A. N. L. and levy on his goods; but, relying on said letter, he desisted. Three days after the date of said letter, J. C. Lincoln, as agent of C. C. K., presented said proposition to A. N. L., who accepted the same and executed a bill of sale of said goods, books, accounts, notes, etc., to C. C. K., and delivered the same, together with the keys and possession of the store, etc., to J. C. Lincoln, as agent for C. C. K. Thereupon C. C. K. entered into possession of said store, and sold and disposed of the goods and collected the notes and accounts. In an action by S. S. H. against C. C. K. for the amount of his judgment, *held*, that the said letter, taken in connection with the action of S. S. H. in giving the time required by C. C. K., and not making costs or otherwise interfering with C. C. K. in the control and disposition of said goods, contained all the elements of an agreement in writing to pay said judgment, upon a sufficient consideration, and was good under the statute of frauds

ERROR to the district court for Richardson county. Tried below before BROADY, J.

*Marquett, Deweese & Hall*, and *J. D. Gilman*, for plaintiff in error, cited: Brandt on Suretyship and Guaranty, sec. 71; *Taylor v. Pratt*, 3 Wis. 674; *Hutson v. Field*, 6 Id. 407; *Emerick v. Sanders*, 1 Id. 77; *Gregory v. Logan*, 7 Blackf. 112; *Jones v. Palmer*, 1 Doug. 379; *Underwood v. Campbell*, 14 N. H. 393; *Castle v. Beardsley*, 10 Hun, 343; *Wain v. Warlters*, 5 East, 10.

*E. W. Thomas,* and *C. Gillespie,* for defendant in error, cited : *Bonns v. Carter,* 20 Neb. 566; *Bonns v. Carter,* 22 Id. 495; *Winner v. Hoyt,* 66 Wis. 227; (S. C., 28 N. W. Rep. 384;) Bigelow on Estoppel, 557.

COBB, J.

The plaintiff below recovered a judgment against the defendant, Kenney, in the district court of Richardson county, in the sum of $753 and costs.    His cause of action was substantially as follows : Hews had previously recovered a judgment in the same court against A. N. Long for the sum of $653 and costs, which judgment remained unpaid and unappealed from when the said Long died intestate, sometime in the month of August, 1885, at Salem, in Richardson county, where he had formerly resided. At the time of his death he was the owner of a drug store and stock of drugs and merchandise therein, together with book accounts for goods sold, and other accounts, alleged by the plaintiff to be worth more than enough, if properly administered, to pay all the debts of the said deceased.

The plaintiff in error, C. C. Kenney, had a claim against the said A. N. Long, and shortly before the death of the latter, Kenney visited him, and while there, arrangements were made between them that Long should assign to Kenney the said drug store, with the notes and accounts, for the purpose of paying the debt due to Kenney, and other debts.    This arrangement was not consummated, however, until some days after Kenney had returned to his home at Lincoln.    Then, on the 6th day of August, 1885, a bill of sale was executed by Long to Kenney, as follows:

"For and in consideration of fifteen hundred dollars, I have this day sold to Dr. C. C. Kenney, of Lincoln, Nebraska, my entire stock of goods, consisting of medicines and drugs of every description, oils, paints, liquors, and sundries, and all other goods that I own, including scales, and all

furniture belonging to me and in the store building where I have been doing business in the town of Salem, Richardson county, and state of Nebraska, and also including in the above sale, for the consideration therein mentioned, all my book accounts and notes that are due me. I hereby assign said book accounts and notes over to the said C. C. Kenney, and the payment of fifteen hundred dollars above mentioned is to be made as follows: that the said C. C. Kenney assumes and agrees to pay the following-named debts, releasing me and my heirs from all obligation to pay the same, to wit:

"One note, with interest, to K. R. Davis, for $500. Signed, A. N. Long and C. C. Kenney.

"One note due Bank of Salem for $100.    Signed, A. N. Long and J. R. Campbell.

"One note due First National Bank, Falls City, Neb., for $150.

"One note due William Lord, of $100; McPike & Fox, of Atchison, Kansas, $164.77; James Walsh & Co., of St. Joseph, Mo., $71.75; Peckham & Mansfield, $15; Louis Stearns, $135; Herman Teihen, $250.

"Payment of the above-named obligations the said C. C. Kenney fully assumes, and is to pay in full consideration of stock, notes, and accounts, as mentioned above. Given under my hand this 6th day of August, 1885.

"[SEAL.]    ·    A. N. LONG."

After the return of Kenney to Lincoln, and three days before the execution of the bill of sale, at Salem, he wrote and mailed to the defendant in error, at his home in Richardson county, the following letter:

"LINCOLN, 8–3, 1885.

"*Mr. S. S. Hews:* DEAR SIR—I have just returned from a trip to see Dr. Long; he is very near his end, and will die in a short time; I looked over his business, and find it in good shape. If J. C. Lincoln and myself

have time, we can pay every debt with the goods and have
·quite a sum left for his wife.   Now I don't want you to
make any costs or trouble, as his wife says she will give
it all to the lawyers before she will ·pay it; but I think in
a short time after his death we can arrange a settlement
with you so you and she will be satisfied.  So don't listen
to any lawyer or any one, and if we can arrange it, you
will get your just dues, as I hold control of the stock,
and will let you know when I go down, which will be in
a few days after his burial.  So keep quiet, and if any-
thing you want to know write me.

"Respectfully,       C. C. KENNEY."

This letter was received by Hews when, as he alleges in ·
his testimony on the trial, he was on his way to the county
seat to see his lawyer about the collection of his judgment
against Long; to have an execution issued, if one was not
already issued, and if one had been issued, to place it in
the hands of the sheriff, and have immediate proceedings
taken for the collection of the judgment.   He also testi-
fied that in consequence of the receipt of the letter, and of
the statement of the writer therein, he did not go to the
county seat, but suspended all proceedings for the collec-
tion of the debt, relying upon the promises contained in
said letter.

The exact date of the death of Long does not appear
either in the pleadings or proof; but it occurred shortly
after the date of the bill of sale and the delivery of the
drug store and property to the agent of Kenney.   There
was no property belonging to the deceased, Long, other
than that transferred by the bill of sale.   It does not ap-
pear that any administrator of the estate was ever ap-
pointed.   Kenney took possession under said bill of sale,
and disposed of the stock of drugs, and collected such of
the notes and accounts as were collectible.

The defendant, plaintiff in error, by his answer to the
petition of the plaintiff, defendant in error, set out the

making and delivery to him of the bill of sale by the deceased, Long, in his life time; alleged that the same was given for a good and full consideration; that at the time of the making of the sale, Long himself fixed the terms of the sale and the payments to be made for the property, and managed and controlled the same, and left the defendant no power nor authority to pay any debt to the plaintiff, nor any right to do so, nor any discretion whatever, but then and there ordered and directed that as a full purchase price of said property, and for the same, defendant should pay the said sums and claims against said Long set out and enumerated in said bill of sale, which sums were by said Long designated and specified; and that defendant has strictly complied with his said contract, and paid in full all of said sums by him to be paid, and has no property in his hands belonging to said Long or to his estate; that at the time of the defendant's purchase of said stock and property, said Long was indebted to defendant in about the sum of $287, and that said Long did not and would not allow such indebtedness to apply in such purchase as a payment, but did insist and order that defendant actually pay every part of such purchase price of said goods and property; and defendant did so pay the said sums in full in every particular, and fully complied with the terms and conditions of such payment.

The cause was tried to the court, and there was a finding of all the issues in favor of the plaintiff, S. S. Hews, and judgment was rendered in his favor. The cause was brought to this court by defendant Kenney.

There are several grounds of error set out in the petition, but only those argued in the briefs of counsel will be considered. These are:

I. That the court erred in holding that the plaintiff's petition states sufficient facts to constitute a cause of action.

II. In admitting in evidence the plaintiff's letter, marked "B."

III. In holding that the letter contained a written prom-
ise to pay the debt due to S. S. Hews from A. N. Long.

The case turns upon the legal construction to be placed
upon the letter of C. C. Kenny to S. S. Hews, heretofore
set forth.    The plaintiff in error invokes the statute of
frauds.    Sec. 8 of chap. 32, page 443, Compiled Statutes,
(referred to as the statute of frauds,) provides that: "In
the following cases every agreement shall be void, unless
such agreement, or some note or memorandum thereof, be
in writing and subscribed by the party to be charged there-
with.    *    *    *    2.    Every special promise to answer for
the debt, or default, or misdoings, of another person——"
etc.

The first contention of counsel is that the letter does not
contain an agreement sufficient to bind the writer thereof
to the payment of the judgment of the defendant in error
against Long.    While it will not be denied that there is
force in the argument to that effect, I think that a fair, rea-
sonable, and natural, construction of the letter, must bring
one to the conclusion that it contains an agreement on the
part of Kenney that in consideration of Hews' refraining
from making costs or trouble, and allowing the writer and
J. C. Lincoln sufficient time after the death of Long to set-
tle up his business and convert his property into money,
he would pay Hews and satisfy his judgment against Long.
It is true that he does not say it in so many words; but
what other construction can be given to the words of the
letter: "So don't listen to any lawyer or any one, and if
we can arrange it, you will get your just dues, as I hold
control of the stock"?    While from the bill of exceptions it
does not appear that Kenney, at the date of the letter, had
personal possession of the stock referred to, yet it does ap-
pear that on the morning of the sixth of August, three days
subsequent to the date of the letter, pursuant to a proposi-
tion previously made by Kenney to Long, the latter exe-
cuted the bill of sale heretofore set forth, and delivered the

same together with the keys of the drug store, to the said J. C. Lincoln, for Kenney, who received and held the same for Kenney until the arrival of the latter, pursuant to a telegraph dispatch from Lincoln to him, and that Kenney thus had entire and complete control of the same until, with the assistance of Lincoln, he had disposed of the stock of goods and the notes and accounts.

It also appears from the bill of exceptions that the statement of Kenney, in his letter to Hews, that he had "just returned from a trip to see Dr. Long," and had "looked over his business," was true; that, being security for Long on a note for a sum of about $500, and having a natural interest in an old acquaintance with whom he had transacted important business matters, he had visited Salem in the interest of Dr. Long and his business affairs at least once, and had made himself familiar with the same, and had just returned thence to his home at Lincoln when he wrote the letter to Hews. While at Salem, and at the residence of Dr. Long, he had talked over the business affairs of the latter with him in the presence of J. C. Lincoln, and had talked over the indebtedness of Long to Hews, when, as testified to by Lincoln on the trial, Kenney had expressed the thought that "if there was the amount of property there was, rather than get into a law-suit or trouble of execution, and selling the property at sheriff's sale, the matter might be compromised by giving the widow something to compromise with Hews." At the same time, according to the evidence of the witness Lincoln, after Kenney had thoroughly examined into the condition of Long's affairs, he authorized him to propose to Long to pay $1,500 of the latter's indebtedness, including the $500 for which he was security, in consideration of the assignment and transfer of the property substantially the same as it was afterwards made.

It appears also that Hews, having obtained a judgment against Long, while he probably hesitated to issue execu-

tion against him during his last illness, fully intended to do so before his decease, which was expected before long, and had finally started to the county seat, from his home near the village of Humboldt, to instruct his attorney to order out an execution, if one had not been issued, and in either event to instruct the sheriff to proceed to Salem for the purpose of levying on the goods of Dr. Long. Upon his arrival at Humboldt, he received the letter from Kenney, which he was unable to read, being an illiterate person; but knowing the business card of Kenney, on the envelope, he returned home to have the letter read to him by his confidential friend, and upon learning its full contents, he relied upon the promise therein contained, and did as requested by Kenney; allowing him and J. C. Lincoln all the time which he required to settle up the affairs of Dr. Long; did not make any costs or trouble; didn't "listen to any lawyer or any one;" and so allowed Kenney and Lincoln to arrange their matters as proposed. This letter on the part of Kenney, and the acts and failure to act, of Hews, constitute, I think, all of the necessary elements of an agreement. I think the letter may be properly interpreted as a proposition on the part of Kenney to Hews that if he would not issue execution against the property of Long, and would allow him (Kenney) the undisturbed control of it, without molestation, he would in due time pay the judgment in question. It is true that he coupled with the proposition, one that he would pay it out of the proceeds of Long's estate, but he informed him in the same letter that he had just returned from an investigation of Long's affairs and business, and found them in good condition. The acts of Hews may be, and I think must be, properly, construed as a full acceptance of this proposition; and the two together constitute an agreement within the meaning of the statute of frauds. There is also a sufficient consideration for this agreement in the giving of time by Hews to Kenney and J. C. Lincoln to "pay every debt with the goods and have

quite a sum left," refraining from making trouble and costs by the issuance of an execution, and by turning a deaf ear to all lawyers.

Were it necessary to invoke the doctrine of estoppel in order to sustain the judgment of the district court, I think it could be successfully done, and that by the facts of the case the plaintiff in error would be held to be estopped to deny that sufficient assets of Dr. Long came into his possession, or under his control, with which to pay the judgment of the defendant in error. As to this position, the cases of *Dock v. Boyd & Co.*, 93 Pa. St. 92; *Daniel v. Robinson*, 33 N. W. R. 497, and other cases cited by counsel for defendant in error, are cases in point, and seem conclusive. See also *Rogers v. Empkie Hardware Co.*, 24 Neb, 553.

The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.